STATE OF MISSOURI ex rel. ELMER JOHN KEITEL, SR., GEORGE A. ROZIER and HARRY P. DRISLER, Members of the UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI, Relators, v. BROWN HARRIS, Judge of Division 4 of the Circuit Court of Jackson County, Missouri.—No. 39247.—186 S. W. (2d) 31.

Court en Banc, March 5, 1945.

1044

*Edward D. Summers,* Acting Chief Counsel, and *John L. Porter,* Assistant Counsel, for relators; *George A. Rozier* of counsel.

*J. K. Owens* for respondent.

ELLISON, J.—This is an original proceeding in prohibition filed here by the members of the Unemployment Compensation Commission as relators, whereby they seek to prohibit the respondent judge of the Jackson county circuit court from entertaining jurisdiction of a "Motion to Quash Execution and Strike Transcript from Record", which was filed in said court by Thomas Manzella under Sec. 1387.[1] The motion assailed certain proceedings in respondent's court which had been initiated by the relators under Sec. 9436, subsections (e-8) and (g), as amended by Laws Mo. 1943, pp. 917, 944, 947 in the Unemployment Compensation Law, dealing with contributions assessed against employers for the benefit of certain unemployed persons in this State. These subsections provide (paragraphing ours):

Sec. (e-8) "The certificate of assessment which, under the provisions of this section, may be filed with the clerk of the circuit court shall, upon such filing, thereafter be treated in all respects as a final judgment of the circuit court against the delinquent and the general statute of limitations applying to other judgments of courts of record shall apply."

Sec. (g) "In any case in which any contributions, interest or penalty imposed under this law is not paid when due and the assessment of which has become final, the Commission may file for record in the office of the clerk of the circuit court in the county in which the delinquent owing said contribution, interest or penalty resides, . . . a certificate specifying the amount of the contribution, interest and penalty due and the name of the delinquent liable for the same and it shall be the duty of the clerk of the circuit court to file such certificate of record and enter the same in the record of the circuit court for judgments and decrees under the procedure prescribed for filing transcripts of judgments.

"From the time of the filing of such certificate, the amount of the contribution, interest and penalty specified therein shall have the

---

[1] All references to our statutes are to R. S. Mo., 1939, and same section numbers in Mo., R. S. A., unless otherwise indicated,

force and effect of a judgment of the circuit court until the same are satisfied by the Commission or its duly authorized agents. Execution shall thereupon be issuable at the request of the Commission, its agent or attorney as is provided in cases of other judgments. . . ."

The facts disclosed by relators' petition and respondent's return, on which the cause is submitted as if relators had filed a motion for judgment on the pleadings, are as follows. Pursuant to the above statute the relators had filed in the respondent's court a certificate showing a specified amount of contributions and interest due from Manzella to the Unemployment Compensation Fund of Missouri. Thereafter, at relators' request the circuit clerk issued an execution returnable to the court on a specified date, commanding the sheriff of the county to make the amount shown due by the certificate, with costs, out of the goods, chattels and real estate of Manzella; and to garnishee his bank account. Manzella then filed the aforesaid motion to quash the execution and strike the certificate from the court records. Relators appeared by counsel and by a plea to the jurisdiction challenged the respondent's right to entertain the motion to quash. Respondent overruled the plea and had set the motion down for hearing, when relators filed their petition for prohibition here.

Relators' primary contentions are: that the contributions imposed by the Unemployment Compensation law are taxes;[2] that Sec. 9436 (e-8) and (g), supra, provides a summary method for the collection of such taxes; that due process in the collection of taxes does not require observance of formalities which might be essential in private litigation, a purely administrative procedure being sufficient.[3] Relying on these premises, relators maintain that the execution issued to the sheriff by the circuit clerk under Sec. 9436(g) is not a judicial but an administrative writ; and that these two officers do not serve as officers of the court in such instances, but "become parts of the tax collecting machinery provided by the Unemployment Compensation Law." And so, relators argue, the circuit court has no jurisdiction to interfere with the execution ■■■ process, in response to a motion to quash or otherwise.

■■■ Prior sections and subsections of the Unemployment Compensation Law[4] do provide for the administrative levy and assessment of the contributions as taxes; and also for a notice and hearing before the Unemployment Compensation Commission. But subsections (e-8), (g), (h) and (i) of Sec. 9436, supra, are the ones

[2]Lucas v. Murphy, 348 Mo. 1078, 1082, 156 S. W. (2d) 686, 688; Meyer & Co. v. Unemployment Comp. Comm., 348 Mo. 147, 162, 152 S. W. (2d) 184, 191; Streckfus Steamers v. Keitel, 353 Mo. 409, 412, 182 S. W. (2d) 587, 588(2).

[3]Spitcaufsky v. Hatten, 353 Mo. 94, 182 S. W. (2d) 86, 96 (12, 13).

[4]Sec. 9427, R. S. 1939 and Mo., R. S. A., as amended by Laws Mo. 1941, pp. 566, 592; Sec. 9436, supra, subsections (a), (b), (c), (d) and (e), Laws Mo., 1943, pp. 917, 944-946.

providing for enforcing collection thereof. The first two of these (quoted above) permit the filing in the circuit court of a certificate of final assessment showing past due contributions, and the direct issuance of an execution based thereon. Subsections (h) and (i) authorize a civil action against employers who default in the payment of the contributions, to which the employer shall be precluded from asserting any defense if he has failed to exhaust his administrative remedies. The two procedures are made cumulative, and pursuit of one is not to be construed as an election excluding the other.

In this case, as stated, the relators followed the procedure under subsec's (e-8) and (g), which gives the certificate of unpaid contributions, when filed, the force and effect of a final judgment of the circuit court, though no notice issuing out of that court to the delinquent employer is required. And subsection (g) further authorizes the issuance of an execution at the request of the Commission, as is provided in the case of *other* judgments. Plainly the filed certificate is put on a parity with any judgment of the court. But Sec. 1391 provides that whenever an execution against a judgment debtor shall be returned unsatisfied, the judgment creditor shall be entitled to a court order requiring him to appear for examination under oath. And Sec's 1560 and 1561 similarly provide that all persons may be summoned as garnishees. Indeed, the respondent's return in this case states the bank account of Manzella was garnisheed. Now if any controversy should arise with respect to the garnishment, who would hear it? And if the execution itself were fundamentally defective would the judgment debtor be precluded from raising that question? We think it clear that the court out of which the execution issued would have jurisdiction over those matters.

And as to the underlying administrative proceedings for the levy and assessment of the tax. Would there not be some court in which the judgment debtor could challenge their validity on fundamental constitutional grounds? Even if the tax collection proceeding here had been wholly in the circuit court from beginning to end, and based on service by publication culminating in a judgment, the statute could not make the prior administrative proceedings *conclusive* evidence of their own validity, if essential jurisdictional requirements had been ignored. It was so held in Spitcaufsky v. Hatten, supra, 353 Mo. 94, 117, 182 S. W. (2d) l. c. 100 (24), though it was further said the judgment of the court *on* the administrative proceedings, as prima facie evidence, would be binding if the court had jurisdiction.

Relators seek a rule absolute in prohibition on the theory: that the filing of the certificate of delinquent contributions in respondent's court, and the issuance, service and levy of an execution were administrative acts; and that the respondent's entertainment of the motion to quash the execution was void and outside his jurisdic-

tion because it invaded a purely administrative field. Yet they seek to clothe the certificate with all the attributes of a judgment, although Manzella had never .theretofore had a day in *court*, as such, and was not (they say) entitled to one after the certificate became in effect a *judgment*.

This is contrary to fundamental law and to our decisions. To say that the Unemployment Compensation Commission, by the mere act of filing in the office of the clerk of a court a certificate of the amount of contributions due from an employer, can give the certificate the full force and effect of a judgment, is to make the Commission a court. But under the constitution a purely administrative body, or even a quasi-judicial body, cannot be a court. This was held of the former State Board of Mediation and. Arbitration;[5] and of the Railroad and Warehouse Commission and the Public Service Commission.[6] The Workmen's Compensation ▇▇ Commission is said to be a ministerial and administrative body with incidental quasi-judicial powers.[7] And the Social Security Commission and the Unemployment Compensation Commission.have been classified as subordinate branches of the Executive Department.[8] It is too clear for argument that they are not courts in a constitutional sense.

▇▇ That being true, it necessarily follows that the Unemployment Compensation Commission alone cannot impart to its certificate the attributes of a judgment. And since Sec. 9436, supra, says they shall possess those qualities, they must be derived from the court in which the certificates are filed, rather than from the Commission. But before that could occur due process would entitle the employer to a notice and hearing in court on the effect of the certificate as a judgment..

Now as regards the notice, the ordinary rule is that general executions may issue out of the court in which the judgment was rendered as a matter of course, on the request of the plaintiff and without notice to the defendant. Sec. 1316.[9] It is a ministerial act performed by the clerk, even in court actions.[10] And we have no doubt of the Legislature's constitutional power to prescribe the same rule with reference to executions based on administrative proceedings under the Unemployment Compensation Act. Neither is it a fatal obstacle that

[5]State ex rel. Haughey v. Ryan, 182 Mo. 349, 356-7, 81 S. W. 435, 437.
[6]State ex rel. Mo. Pac. Rd. Co. v. Pub. Serv. Comm., 303 Mo. 212, 218-9, 259 S. W. 445, 447(2).
[7]Liechty v. K. C. Bridge Co. (Mo. Div. 1), 162 S. W. (2d) 275, 279(2).
[8]Howlett v. State Security Comm., 347 Mo. 784, 788(4), 149 S. W. (2d) 806, 809; State ex inf. McKittrick v. Murphy, 347 Mo. 484, 487(2), 148 S. W. (2d) 527, 528.
[9]See cases digested in 13 West's Mo. Dig., sec. 137, p. 59.
[10]State ex rel. St. Louis v. Priest, 348 Mo. 37, 46(6), 152 S. W. (2d) 109, 112(9).

no court hearing is accorded the employer before the Commission's certificate is filed and the execution levied.

The requirements of due process are only that there be a hearing at some stage of the proceedings before they become final. This is true not only in tax proceedings but in ordinary civil litigation, familiar examples being the advance seizure of property in attachment or replevin.[11] Indeed, it has been said the ordinary procedure, where the taxpayer denies liability or challenges the validity of the statute, is to pay the tax under protest as a basis for recovery back.[12] At any rate, we are convinced that the provision in Sec. 9436 (e-8) and (g) giving the Commission's certificate the full force and effect of a judgment, would at least entitle the employer to move to quash the execution on grounds attacking the prima facie validity of the judgment, or that of the execution.[13]

But we do not mean he can go behind the record and retry the whole administrative proceeding on the merits. That would be valid, if essential constitutional requirements were observed, without the foregoing provisions about filing the certificate in court. They apparently were inserted to facilitate the collection of the contributions. His challenge can go only to the fundamental sufficiency of the certificate, and also to its prima facie validity *as* a judgment together with that of the execution—the same as might be done in the case of ordinary judgments and executions. We do not know what questions Manzella seeks to raise by his motion to quash. But since relators' petition makes only the broad contention that *no* such motion can be filed at all, because the court would not have jurisdiction to entertain it, our provisional rule in prohibition heretofore issued is quashed. All concur.

[11]51 Am. Jur., sec. 980, p. 857; 12 Am. Jur., sec. 611, p. 305; 61 C. J., sec. 1360, p. 1044; Spitcaufsky v. Hatten, supra, 353 Mo. 94, 111, 182 S. W. (2d) l. c. 96(13).

[12]51 Am. Jur., sec. 943, p. 830; but see 61 C. J., secs. 1271, 1272, pp. 992, 993.

[13]Dewey v. Union Elec. Co. (Mo. App.), 83 S. W. (2d) 203, 205(2); Farrell v. Kingshighway Bridge Co. (Mo. App.), 117 S. W. (2d) 693, 696(1); Harrison v. Creason (Mo. App.), 176 S. W. (2d) 849, 851(5).